**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Ernest E. HASELTINE, Jr., Defendant-
Appellant.**

**No. 23779.**

United States Court of Appeals
Ninth Circuit.

Dec. 18, 1969.

Rehearing Denied Jan. 19, 1970.

Franklyn K. Brann (argued), San Francisco, Cal., for appellant.

F. Steele Langford (argued), Asst. U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLIN, MERRILL and KILKENNY, Circuit Judges.

MERRILL, Circuit Judge.

Appellant, an insurance broker, was charged in four counts with having wilfully failed to file income tax returns for the years 1962 through 1965, in violation of 26 U.S.C. § 7203.[1] Following jury trial he was adjudged guilty on two of the four counts.

1. The principal issue on trial was whether or not the failure to file was wilful in the sense in which that term is used in § 7203. There is no question but that it was knowing. Appellant contends, however, that his failure to file was the product of psychological and emotional pressures rather than of a purpose to avoid payment of the tax. He assigns as error the rejection by the District Court of an offer of proof of his mental state through testimony of a psychiatrist.[2]

---

1. "Any person required under this title to * * * make a return * * * who willfully fails to * * * make such return * * * at the time or times required by law or regulations * * * shall * * * be guilty of a misdemeanor * * *."

2. The offer was as follows:

"He [the psychiatrist] is personally aware of the tempestuous divorce and he is personally aware of Mr. Haseltine's business failure. He is able, on the basis of his professional observation, to form an opinion. That opinion is that Mr. Haseltine is a compulsive neurotic.

His own observations—which were not disclosed to him by Mr. Haseltine—are that Mr. Haseltine is punctilious and meticulous to an excessive degree in many of his behavior patterns, and that as a consequence it was extremely difficult for this man to surmount the psychological obstacle of not having all of his records, and that this coupled with the state of total distraction occasioned by the divorce and the state of depression caused by the loss of his formerly flourishing business provided a stumbling block which this man was unable to overcome until certain prob-

■■ It was not error for the court to reject this offer. Insanity was not interposed as a defense and it is not contended that appellant's compulsion so affected his volitional control as to meet insanity standards. We reject appellant's argument that the doctrine of diminished responsibility should nevertheless relieve him of the consequences of his conduct.[3] Being sane, he had the capacity to act wilfully. The question is whether he did in fact so act.

■ The nature of the wilfulness required by § 7203 was last discussed by this court in United States v. Fahey, 411 F.2d 1213 (9th Cir. 1969), cert. denied, 396 U.S. 957, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969). It was there held that the wilfulness required for this misdemeanor did not entail a purpose to evade tax or to defraud, such as is required for the felony offense (26 U.S.C. § 7201). *Id.* at 1214. For this misdemeanor, then, wilfulness entails no purpose or motive other than to evade the law's requirements.

■ Further it is clear from *Fahey* that the fact that failure to file was associated with emotional and psychological pressures does not excuse a clear, sane and conscious purpose not to file.

2. We find no error (let alone plain error) in the court's instructions or in its rejection of instructions offered by appellant.

3. Appellant assigns as error the sentence imposed by the court.

The court first sentenced appellant to serve 48-hour periods in a jail-type institution once each weekend for a term of six months (26 weeks). Appellant was directed to surrender himself each week according to the instructions of the Probation Officer and the U.S. Marshal for the Northern District of California.

The court in sentencing made it clear that it was rejecting the alternative of probation, apparently determined that the onus of formal sentence should be suffered. Nevertheless the court expressed its desire for supervision by the Probation Officer in connection with the sentence imposed, and expressly reserved the right to modify the sentence depending upon the manner in which it was carried out. Clearly, this was to be a court-controlled sentence.

Later that same day the court, proceeding under Rule 35, F.R.Cr.P., revoked the sentence as illegally imposed and sentenced appellant to the custody of the Attorney General for three months on each count, the sentences to run consecutively—a total of six months imprisonment. It is this second sentence that appellant challenges.

Appellant first contends that Rule 35 only permits correction of an illegal sentence and that the first sentence was perfectly legal.

In our judgment the first sentence was illegal.

■ The interspersing of jail time with time at large under supervision of a Probation Officer and subject to judicial control and modification would indeed appear to be an enlightened effort toward correction. However, it is available to the courts only where sentence is suspended and restraints are imposed as conditions of probation. Where sentence is actually imposed, control over the

lems had been resolved, such as the reavailability to him of records, the cessation of the divorce." (R.T. 12–13)

The doctor would further testify that it was not "mentally possible for Mr. Haseltine to complete and file tax returns for the years [in question]." (R.T. 13)

3. The application of the "diminished responsibility" doctrine, so far as we have been able to ascertain, has been applied exclusively to capital cases, to reduce convictions of first degree murder to second degree when there are extenuating circumstances. The doctrine has permitted the court to avoid affirming the death penalty where, for example, an obviously mentally ill defendant is considered sane under traditional insanity rules, or a youthful murderer seems to lack sufficient moral turpitude for a conviction of first degree murder. See People v. Wolff, 61 Cal.2d 795, 40 Cal.Rptr. 271, 394 P.2d 959 (1964); People v. Wells, 33 Cal.2d 330, 202 P.2d 53 (1949).

prisoner passes to the Attorney General and determination of the manner in which sentence shall be served is for agencies of the Department of Justice. What the court did here in effect was to assume for itself powers of parole and postsentence supervision not possessed by the judiciary. See 18 U.S.C. §§ 3651, 4082.

Appellant next contends that the second sentence amounted to an increased sentence; that to correct a sentence under Rule 35 by increasing it amounts to double jeopardy.

The second proposition we need not reach. In our judgment sentence was not in fact increased, for there was no increase in the period of restraint. While jail days were increased the overall custodial period remained the same. In correcting sentence the court did no more than eliminate the source of illegality—its assumption of powers of parole and postsentence supervision. Those powers were left to be exercised in the case of this prisoner by the agencies and in the manner prescribed by law.

Judgment affirmed.