**UNITED STATES of America**

v.

**Paul BAXT.**

**Criminal No. 99–75.**

United States District Court, D. New Jersey.

Nov. 8, 1999.

438

Faith S. Hochberg, United States Attorney, Mark R. Winston, Assistant United States Attorney, Newark, NJ, for United States of America.

John Voorhees, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, CO, for Paul Baxt.

---

OPINION

ORLOFSKY, District Judge.

This case requires me to consider the circumstances in which a defendant may introduce expert testimony concerning his alleged mental infirmities to demonstrate that he lacked the requisite *mens rea* to commit the crime charged. On February 19, 1999, Defendant, Paul Baxt ("Baxt"), was indicted for misrepresenting his financial assets on loan applications submitted to Summit Trust Company ("Summit Trust") in violation of 18 U.S.C. §§ 1014 and 2.[1] *See* Indictment (filed Feb. 19, 1999). The alleged offenses occurred in February and May, 1989. *See id.;* Aff. Dr. Michael Peter Weissberg, Ex. 25 (filed Apr. 27, 1999). Baxt misrepresented his financial assets apparently in the hope that Summit Trust would issue a loan that he and others could use to renovate the Grove Mercantile office building located in Jersey City, New Jersey. *See* Aff. Dr. Michael Peter Weissberg, Exs. 6, 16. Baxt does not deny that he submitted financial statements over-valuing his financial assets. *See id.,* Ex. 16. He argues instead that he did not have the requisite *mens rea* to support a conviction for filing false loan applications. *See id.* Specifically, he contends that when he filed the false financial statements, he suffered from Bipolar Disorder and Multiple Sclerosis—a combination of brain dysfunctions that resulted in his making grandiose representations about his financial worth. *See id.* ¶ 3, Exs. 2–5, 16.

On May 27, 1999, Baxt filed a motion, pursuant to Federal Rule of Criminal Procedure 12.2(b),[2] giving notice of his inten-

---

1. Section 1014 states, in relevant part:

 Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any institution the accounts of which are ensured by the Federal Deposit Insurance Corporation ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1014 (1994).

 Section two states, in pertinent part: "Whoever commits an offense against the United States ... is punishable as a principal." 18 U.S.C. § 2(a) (1994).

2. The rule states, in relevant part:

 If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the

tion to introduce expert testimony concerning his alleged mental infirmities. *See* Notice of Motion to Present Evidence of Def.'s Mental Condition (filed May 27, 1999). According to papers filed by Baxt in accordance with Rule 16 of the Federal Rules of Criminal Procedure,[3] Baxt seeks to introduce the expert testimony of two doctors. *See* Rule 16 Compliance at 1 (filed June 16, 1999). Dr. David Starrett ("Starrett") will testify that in February and May, 1989, Baxt experienced:

> episodes of reckless and irrational spending during which [Baxt] presented himself as a man of value and wealth.... [H]is actions were a by-product of ... major Bipolar Disorder, DSM–III–R 296.63 with severe depression accompanied by occasional rapid-cycling, manic episodes complete with poor judgment, pressure of thought and action, and grandiosity, occasionally of psychotic proportions.... [M]ental illness caused [Baxt's] erratic behavior including the submission of false documents to the Summit Trust Company.... [Baxt] typically expected his plans in life to fail, and therefore, never actually expected to receive money from his applications to Summit Trust. [Baxt] was only minimally aware, if at all, of the true nature and consequences of his behavior.

*Id.* at 2–3 (filed June 16, 1999). Dr. Michael P. Weissberg ("Weissberg") will testify additionally that Baxt suffered from Multiple Sclerosis and substance abuse and that these illnesses, along with Baxt's Bipolar Disorder, "degraded [Baxt's] ability to think logically, problem-solve, reason

and promote[d] grandiose, impulsive behavior." *Id.* at 3–5.

On July 17, 1999, the Government filed a motion to exclude Baxt's proposed expert testimony. *See* Notice of Mot. (filed July 17, 1999). In the alternative, the Government moved for a *Daubert* hearing and an order compelling Baxt to be examined by a Government-retained doctor. *See id.*

For the reasons set forth below, I shall deny Baxt's motion to introduce the proposed expert testimony and grant the Government's motion to exclude such testimony because Baxt has failed to make the requisite showing that the proffered expert testimony would be introduced for the narrow purpose of negating the *mens rea* elements of the offense with which he is charged.

**I. Discussion of the Legal Standard for the Admission of Expert Psychiatric Testimony**

The Government argues that the proposed testimony of Starrett and Weissberg is inadmissible because it is irrelevant to an assessment of Baxt's state of mind at the time he filed false financial statements with Summit Trust. *See* Government's Mot. in Limine at 19–21; Government's Reply Br. in Regard to Expert Testimony at 9–11. Baxt counters that Starrett's and Weissberg's testimony will prove that Baxt lacked the requisite *mens rea* to be convicted of violating 18 U.S.C. § 1014. *See* Def. Dr. Paul Baxt's Resp. to Government's Mot. in Limine as to Expert Testimony at 6–11 (filed July 30, 1999).

---

defendant bearing upon the issue of guilt, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk.
Fed.R.Crim.P. 12.2(b).

**3.** Rule 16 states, in pertinent part:
Under the following circumstances, the defendant shall, at the government's request, disclose to the government a written sum-

mary of testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial: ... (ii) if the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition. This summary shall describe the witnesses' opinions, the bases and reasons for those opinions, and the witness' qualifications.
Fed.R.Crim.P. 16(b)(1)(C).

■ Expert testimony concerning a criminal defendant's alleged mental illness is admissible in limited circumstances. It is well-settled in this Circuit that such testimony is admissible only if it is offered: (1) in support of a plea of insanity; or (2) to negate the *mens rea* element of an offense. *See United States v. Pohlot*, 827 F.2d 889, 896–97 (3d Cir.1987). There are, furthermore, two *mens rea* elements to the crime codified in section 1014:(1) knowledge of the falsity of the information submitted to the bank; and (2) the intent to influence the action of the bank. *See United States v. Erskine*, 588 F.2d 721, 722 (9th Cir.1978); *see also United States v. Sparks*, 67 F.3d 1145, 1151–52 (4th Cir. 1995) ("[T]he presence or absence of an intent to deceive is simply irrelevant to the defendant's guilt; the only specific intent that matters for purposes of § 1014 is the intent to influence the bank's actions"). Baxt has not mounted an insanity defense. Consequently, expert testimony concerning Baxt's alleged mental illnesses is admissible only if "it would support a legally acceptable theory of lack of *mens rea*." *Pohlot*, 827 F.2d at 905–06. More specifically, the testimony of Starrett and Weissberg is admissible if it supports either a theory that Baxt did not know that the papers he submitted to Summit Trust were false or a theory that Baxt lacked the intent to influence Summit Trust when he filed false statements.

■ The testimony of Starrett and Weissberg is not admissible, however, if it merely supports a defense of justification or excuse. Defenses of justification and excuse, such as "diminished capacity" and "diminished responsibility" defenses, are not acceptable theories of lack of *mens rea*. The Third Circuit has held that the Insanity Defense Reform Act of 1984[4]

abolished the admission of expert testimony in support of these theories. *See id.* at 898–99. As a result, expert testimony is admissible only when it is proffered to demonstrate that a defendant actually lacked the requisite *mens rea* at the time an alleged offense was committed; it is not admissible to mitigate the defendant's responsibility simply because the defendant's alleged mental illness deprived him of the capacity to form intent or prevented him from engaging in normal reflection. *See id.* at 890, 903–904. Expert psychiatric testimony concerning "unconscious motivation," "impaired volitional control," or an "inability to reflect on the ultimate consequences of one's conduct" is inadmissible. *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir.1990). A court's focus in assessing the admissibility of expert psychiatric testimony should be "on the proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." *United States v. Childress*, 58 F.3d 693, 730 (D.C.Cir.1995). Conclusory statements by a defendant about the link between psychiatric evidence and the defendant's *mens rea* at the time the alleged crime was committed do not render the evidence admissible. *See United States v. Bennett*, 161 F.3d 171, 181, 185 (3d Cir.1998). In other words, the testimony of Starrett and Weissberg is inadmissible unless offered to support the claim that either Baxt did not know he filed false statements or that Baxt did not intend to influence the action of the bank through the submission of those statements.

■ Because psychiatric testimony that does not truly negate *mens rea* likely confuses jurors and because the use of psychiatric testimony even for the pur-

---

4. The Act states, in pertinent part:
 (a) Affirmative defense.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
 (b) Burden of Proof.—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.
 18 U.S.C. § 17 (1994).

poses of negating *mens rea* "may easily slide into wider usage that opens up the jury to theories of defense more akin to justification," District Courts in the Third Circuit have been urged to examine proffers of expert psychiatric testimony closely. *Pohlot*, 827 F.2d at 890, 903, 905. District Courts have broad discretion to exclude expert testimony that is not offered as part of an insanity defense or to negate the *mens rea* element of a crime. *See Bennett*, 161 F.3d at 182; *United States v. DiDomenico*, 985 F.2d 1159, 1163 (2d Cir.1993); *Erskine*, 588 F.2d at 722. The admissibility of expert psychiatric testimony should be determined outside the presence of a jury. *See Pohlot*, 827 F.2d at 905–906. Ascertaining whether proposed expert testimony is offered to negate the *mens rea* element of an offense is only the initial step in determining whether such expert testimony is admissible; once this hurdle is overcome, the testimony will be admitted only if it satisfies the requirements of Rules 702 and 403 of the Federal Rules of Evidence. *See United States v. Libutti*, Crim.No. 92–611, 1994 WL 774646, at *4–5 (D.N.J.1994) (Simandle, J.).

 The burden that must be met for expert psychiatric testimony to be admitted is a substantial one. The *Pohlot* Court has cautioned that the occasions on which expert psychiatric testimony is admissible to defeat the *mens rea* element of a crime are rare:

> Only in the rare case ... will even a legally insane defendant actually lack the requisite *mens rea* purely because of mental defect. ... Even the most psychiatrically ill have the capacity to form intentions, and the existence of intent usually satisfies any *mens rea* requirement. ... *Mens rea* is generally satisfied ... by any showing of purposeful activity, regardless of its psychological origins.

*Id.* at 900–04. This burden of showing that proffered testimony is offered to negate the *mens rea* element of a crime and

not in support of some improper defense theory falls squarely on the defendant. *See United States v. Williams*, 95 F.3d 723, 729 (8th Cir.1996).

## II. Application of the Legal Standard for the Admission of Expert Psychiatric Testimony to Baxt's Proposed Expert Testimony

 The proposed expert testimony of Starrett and Weissberg fails to satisfy the standard for admissibility established by *Pohlot*. Starrett will testify that Baxt's mental illnesses resulted in "manic episodes complete with poor judgment, pressure of thought and action and grandiosity." Rule 16 Compliance at 2–3. Weissberg will testify that mental illness "degraded [Baxt's] ability to think logically ... and promote[d] grandiose, impulsive behavior." *Id.* at 3–5. Their testimony suggests that Baxt's behavior was excusable because Baxt's mental illnesses induced Baxt—on some subconscious level— to submit false statements to Summit Trust. As the Third Circuit stated in *Pohlot*, however, "a lack of self-reflection does not mean a lack of intent and does not negate *mens rea*." *Pohlot*, 827 F.2d at 906.

> Criminal responsibility must be judged at the level of the conscious. If a person thinks, plans and executes the plan at this level, the criminality of his act cannot be denied, wholly or partially, because, although he did not realize it, his conscious was influenced to think, to plan and to execute the plan by unconscious influences which were the product of his genes and his lifelong environment.

*Id.* (citing *State v. Sikora*, 44 N.J. 453, 210 A.2d 193 (1965)). Moreover, evidence of impaired judgment, which seems to be the central effect of Baxt's mental infirmities, is not evidence of a lack of *mens rea*. *See United States v. Sewards*, 879 F.Supp. 502, 513 (E.D.Pa.1995). That Baxt may have been overcome by certain passions that are the product of his mental illness—an

impulse for grandiosity or poor judgment, for example—does not demonstrate that Baxt did not know that the financial statements he submitted to Summit Trust were false. Likewise, it does not show that Baxt did not intend to influence the actions of Summit Trust when he submitted false statements to it in February and May, 1989. "*Mens rea* is generally satisfied . . . by any showing of purposeful activity, regardless of its psychological origins." *Pohlot*, 827 F.2d at 904. Baxt's proposed expert testimony does not demonstrate that his conduct, even if influenced by Bipolar Disorder and Multiple Sclerosis, was less than purposeful. In other words, Starrett's and Weissberg's testimony does not negate the *mens rea* elements of the crime Baxt is alleged to have committed.

▮ That Baxt's experts will testify that he "was only minimally aware, if at all, of the true nature and consequences of his behavior," Rule 16 Compliance at 2–3, does not make their testimony any more admissible. "We often act intending to accomplish the immediate goal of our activity, while not fully appreciating the consequences of our acts. But purposeful activity is all the law requires." *Pohlot*, 827 F.2d at 907. For Starrett's and Weissberg's testimony to be admissible, it must negate Baxt's *mens rea* by tending to prove that Baxt did not submit false financial statements knowingly or with the intent to influence Summit Trust. In other words, it must show that Baxt did not act purposefully. While he may not have accurately perceived the damage he would do to himself and others by submitting false financial statements to Summit Trust, his submissions were no less purposeful as a result.

▮ Finally, it matters not that "Baxt typically expected his plans in life to fail, and therefore, never actually expected to receive money from his applications to Summit Trust." Rule 16 Compliance at 2–3. In *Pohlot*, the defendant wanted to introduce expert testimony that his mental illness created in him the expectation that his plan to have his wife killed would not succeed and that, as a result, the defendant lacked the *mens rea* to kill his wife. *See Pohlot*, 827 F.2d at 893. The Third Circuit ruled that it was proper for the District Court to exclude such evidence because it did not show that the defendant acted without purpose in having his wife killed. *See id.* at 906. Similarly, Baxt's expert testimony is inadmissible because it fails to address the only question it can be supplied to answer, i.e., whether Baxt acted with purpose when he submitted false statements to Summit Trust.

If Baxt's proposed expert testimony directly negated the *mens rea* elements of his alleged offenses, my conclusion concerning the admissibility of the testimony would be different. The District Court's opinion in *Libutti* offers guidance as to the type of expert evidence that Baxt would have had to have introduced to negate directly the *mens rea* elements of the offense with which he is charged. The defendant in *Libutti* was indicted for willfully evading payment of income taxes. *See Libutti*, 1994 WL 774646, at *1. He tried to introduce expert testimony that he was a compulsive gambler and that his gambling compulsion, not any criminal intent, was the cause of his behavior. *See id.* A portion of that testimony addressed the defendant's failure to pay taxes despite his often having the resources to make partial payments. *See id.* at *9–10 Rather than make partial payments, the defendant would use whatever resources he had to gamble. *See id.* The defendant argued that he gambled in the hope of winning enough money to pay off his tax bill in full. *See id.* He attempted to introduce expert testimony that compulsive gamblers often suffer from the mistaken but sincerely-held belief that creditors will not accept installment payments on debts. *See id.* The court admitted this testimony because it tended to show that the defendant did not willfully intend to secret money away from the Internal Revenue Service ("IRS"). *See id.* Rather, it suggested

that he honestly held the belief, as a result of his mental disorder, that the IRS would not accept partial satisfaction of his tax liabilities and that this belief caused him to gamble further in order to generate the amount of money that was needed to pay the balance in full. *See id.* In short, the court held that the testimony negated the *mens rea* element of the defendant's alleged crime. *See id.*

In this case, Starrett's and Weissberg's expert testimony says nothing about Baxt's knowledge of the falsity of his financial statements nor does it say anything about his intent to influence Summit Trust. Rather, it resembles much more the type of psychiatric testimony rejected in *Libutti.* The court in *Libutti* ruled Libutti's expert testimony to be inadmissible insofar as it suggested that the defendant's failure to pay his taxes was the result of a his need to maintain his gambling "habit" and to devote all of his financial resources to that end. *See id.* at *13. The court held that such testimony was simply offered as an excuse or justification, improperly suggesting that evidence of an unconscious motivation could negate the *mens rea* element of the crime charged. *See id.* Similarly, the proposed expert testimony in this case suggests Baxt should be excused for his behavior because his mental illness inspired in him some kind of unconscious impulse to spend—not because he lacked the state of mind to commit the crime with which he is charged.

In short, Starrett's and Weissberg's testimony does not have the type of close fit with a "legally acceptable theory of *mens rea*" that the *Pohlot* case requires. Rather, it constitutes precisely that type of testimony that is apt to draw a jury's attention away from an assessment of a defendant's actual *mens rea* at the time of his alleged crime and is, as a result, precisely the type of testimony that is inadmissible at trial.

### III. Conclusion

For the reasons set forth above, I find that Defendant Paul Baxt has not demonstrated that the proposed testimony of Dr. David Starrett and Dr. Michael P. Weissberg negates the *mens rea* elements of the offenses with which Baxt is charged. Specifically, it is not offered to show that Baxt lacked knowledge of the falsity of the financial statements he submitted to Summit Trust nor does it demonstrate that Baxt lacked the intent to induce Summit Trust to issue loans on the basis of his false representations. Because he has failed to satisfy his burden under the applicable legal standard, Baxt's motion to introduce the expert testimony of Starrett and Weissberg is denied and the Government's motion to exclude the testimony is granted.

An appropriate order will be entered by the Court.

### ORDER

This matter having come before the Court on the motion of Defendant Paul Baxt ("Baxt"), to introduce the expert testimony of Dr. David Starrett and Dr. Michael P. Weissberg, John Voorhees, Esq., Isaacson, Rosenbaum, Woods & Levy, P.C., appearing on behalf of Baxt, and on the motion of the Government to exclude the testimony of Dr. David Starrett and Dr. Michael P. Weissberg, Faith H. Hochberg, Esq., United States Attorney, Mark R. Winston, Esq., Assistant United States Attorney, appearing on behalf of the United States; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 8th day of November, 1999, hereby ORDERED that the motion to introduce expert testimony is DENIED and the motion to exclude expert testimony is GRANTED.